IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID BAKER and CAROL BAKER, :
:
    Plaintiffs, :
:
v. : 3:12-CV-01231
: (JUDGE MARIANI)
METROPOLITAN PROPERTY AND :
CASUALTY INSURANCE COMPANY, :
:
    Defendant. :

FILED
SCRANTON

SEP 1 9 2013

PER ____/s/____
DEPUTY CLERK

**MEMORANDUM OPINION**

## I. Procedural History

This case arose from an insurance dispute in which Defendant Metropolitan Property and Casualty Insurance Company ("Metlife") refused to pay for damages sustained to Plaintiffs' in-ground swimming pool. (Notice of Removal, Doc. 1-2, Compl., at ¶ 12 (hereinafter "Compl.").) Plaintiffs alleged that "the Plaintiffs' pool sustained a covered loss [under their insurance policy] when the in-ground concrete swimming pool lifted and/or heaved up at least one (1) foot from the ground due to [a] plumbing system break and/or burst." (*Id.* at ¶ 6.) After sending "a pool tester" and "an engineer" to inspect the pool, Defendants concluded that the damage was not covered by Plaintiffs' insurance policy, but was caused by wear and tear to an underground pipe "which exerts pressure on a swimming pool." (*Id.* at ¶¶ 8-9, 12.)

Defendant removed this case to federal court on diversity grounds. (*See* Doc. 1.) It then filed a Motion for Judgment on the Pleadings, claiming that it had no duty under the Plaintiffs' policy to afford coverage for the damage to their swimming pool. (*See* Doc. 8.) The case was assigned to Magistrate Judge Blewitt for a Report and Recommendation ("R&R"). On August 16, 2013, Judge Blewitt recommended that the Motion be granted because the clear language of the insurance contract excluded the Plaintiffs' loss from coverage. (*See* Report and Recommendation, Doc. 16, at 12-16.) Plaintiffs timely objected to the R&R. (*See* Doc. 17). Accordingly, the Court now reviews the R&R *de novo*. *See* 28 U.S.C. § 636(b)(1).

## II. <u>Standard of Review</u>

The Court adopts and incorporates herein Judge Blewitt's discussion of the standards governing a motion for judgment on the pleadings. (*See* Report and Recommendation at 5-7.)

The Court also adopts Judge Blewitt's conclusion that, under Pennsylvania law, interpretation of an insurance policy exclusion is a question of law for the Court, and that clearly-worded exclusions are to be interpreted according to their clear meaning. (*Id.* at 9.) If a term is ambiguous, such that "reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning, and if more precise language could have eliminated the ambiguity," then the Court will construe it

2

against the insurer and in favor of the insured. (*Id.* (quoting *Hollingsworth v. State Farm Fire & Cas. Co.*, 2005 WL 563414, at *5 (E.D. Pa. 2005)).)

## III. Policy Provisions

The "lead-in clause" of Plaintiffs' insurance policy states, in clear terms:

**SECTION I – LOSSES WE DO NOT COVER**

1. We do not insure any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. We do not insure for any such loss regardless of:
    a. the cause of the excluded event[.]

(*Id.* at 10; Notice of Removal, Doc. 1-3, Insurance Agreement and Declarations, at 13 (hereinafter "Insurance Agreement").)

Listed among the uncovered losses is:

**D. Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:
   3. *water* or water-borne material *below the surface of the ground, including water which exerts pressure on* or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, *swimming pool* or other structure *or water which causes earth movement.*

(Insurance Agreement at 14 (emphasis added); Report and Recommendation at 10-11.)

The Plaintiffs argue, however, that Section I.12 of their policy overrides this exclusion. Section I lists the "Broad Named Perils" that Defendant insures, which includes:

12. **Discharge or Overflow of Water or Steam** from within a plumbing, heating, air conditioning or automatic fire sprinkler system or from a domestic

3

appliance. The loss must be sudden and accidental. With regard to your property covered under Coverage A or Coverage B, we also will pay to tear out and replace any part of a building or other structure on the residence premises but only when necessary to repair the system or appliance from which the water or steam escaped. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the residence premises.

(Insurance Agreement at 13; Report and Recommendation at 10.)

Plaintiffs argue that Defendant has an obligation to repair the ruptured plumbing line. But because the only way to access the plumbing line is to tear out and replace the pool, Plaintiffs argue that Section I.12 overrides the water damage exclusion and requires Defendants to tear out and replace the pool. (Pls.' Brief in Opp. to Def.'s Mot. for J. on the Pleadings, Doc. 13, at 4-5.)

However, Judge Blewitt noted that the clear language of Section I.12 states that tear out and replacement coverage is only triggered if the water causes "actual damage to a *building* on the residence premises." (*See* Report and Recommendation at 12.) A swimming pool, Judge Blewitt stated "is clearly classified as an 'other structure' and not a building" according to the language of the policy. (*Id.*) Therefore, Judge Blewitt concluded that the water damage exclusion does indeed bar coverage. (*Id.* at 15.)

Judge Blewitt also concluded that Plaintiffs' losses were excluded by the "earth movement exclusion." (*Id.* at 16.) This exclusion, which is subject to the same lead-in clause as the water damage exclusion, excludes coverage from:

4

> **E. Earth Movement**, meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:
>> 7. the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land[.]
>
> This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.

(Insurance Agreement at 15; Report and Recommendation at 15-16.) Judge Blewitt concluded that, because Plaintiffs concede that their pool "lifted and/or heaved up at least one (1) foot from the ground due to [a] plumbing system break and/or burst . . . [i]t is uncontested . . . that the damage to Plaintiffs' pool was caused by some movement of the earth." (Report and Recommendation at 16.)

The Court cannot agree that there are sufficient allegations to grant a Motion for Judgment on the Pleadings as to the earth movement exclusion. The Plaintiffs' Complaint only contains references to water damage; there are no clearly-stated allegations at this stage of the litigation, which, if proven, would show that some movement of the soil itself, rather than of water within the soil, caused the damage to Plaintiffs' pool.

However, because the Court agrees that the water damage exclusion, as laid out above, is sufficient by itself to exclude Plaintiffs' loss based on the facts alleged in

Plaintiffs' Complaint, the Court shall adopt the R&R's ultimate recommendation and grant Defendant's Motion for Judgment on the Pleadings.[1]

## IV. Discussion

In regards to the water damage exclusion, the Court sees no reason to disagree with Judge Blewitt's common-sense interpretations, which follow from an objective reading of the insurance policy. Moreover, this interpretation of the water damage exclusion in Section I.D.3. forces the Court to conclude that the matters referenced in Section I.D.3. are excluded from coverage even if, in the absence of that section, they would otherwise qualify as covered occurrences. Simply put, given the expansive language of the policy—which bars coverage for water beneath the surface of the ground that exerts pressure on a swimming pool, regardless of cause—no reasonable interpretation of the policy could give the Plaintiffs the relief they seek.

In this regard, the Court agrees with Judge Blewitt that the case of *Collela v. State Farm Fire and Casualty Company*, 407 Fed. App'x 616 (3d Cir. 2011), though not

---

[1] As to the Defendant's third ground for granting its Motion, (*see* Brief in Supp. of Def.'s Mot. for J. on the Pleadings, Doc. 10, at 6, 13-14), that the "wear and tear exclusion," (*see* Insurance Agreement at 16), applies, the Court agrees with Judge Blewitt's finding that such an argument is irrelevant. As Judge Blewitt stated,
> [B]ecause we have already determined that the pipe repair does not fall within the coverage of Section 12, such an argument as to the cause of the pipe burst is without merit. The lead-in clause clearly states that the cause of an excluded event is not relevant, and will not be considered . . . .

(Report and Recommendation at 13-14.) In other words, even if we assume, as Plaintiffs allege, that the pipe suddenly and unexpectedly burst, and did not gradually deteriorate through wear and tear, the damage would still not be covered under their policy for the reasons discussed in Section IV, *infra*. Therefore, this Court, like Judge Blewitt, will not address the wear-and-tear argument.

6

precedential, is highly persuasive and directly on point. (See Report and Recommendation at 14.) *Collela* involved a nearly identical insurance policy that also excluded from coverage water below the surface of the ground, regardless of the cause of the subsurface water. *Collela*, 407 Fed. App'x at 620-21. The Third Circuit held that the language of the policy was unambiguous and precluded Plaintiffs' insurance claim. *See id.* at 621 ("We agree with State Farm and see no way to interpret the words 'regardless of the cause' in a manner that provides coverage for the Colellas. The State Farm policy states that it excludes coverage for damage caused by water below the surface of the ground, regardless of the cause of the subsurface water. . . . Because the State Farm policy language is unambiguous, we must give effect to that language.") (internal citations omitted).[2]

For the same reasons, this Court must also give effect to the plain language of the Plaintiffs Bakers' insurance policy. The Court finds that the water damage exclusion to

---

[2] Plaintiffs' references *McEwing v. Lititz Mutual Insurance Co.*, 2013 WL 3378977 (Pa. Super. Ct. 2013) in opposition to *Colella*. (Objections at 5.) *McEwing*, however, turned on a fact-specific determination of whether the McEwings' damages were caused by water (which was not covered) or by dry rot (which was covered). *See McEwing*, 2013 WL 3378977 at *1-4. The lower court, after a full trial, found that the plaintiffs' expert opinions as to the cause of the damage were more credible than those of the defendants, *id.* at *4, and the appellate court found no reason to overturn that judgment, *id.* at *7. These narrow factual determinations are not helpful to the matter at hand. Indeed, in the present case the factual issues, such as the cause of damages, are undisputed. Rather, the only issue before this Court is the legal one of whether the Plaintiffs' damages are excluded by their policy.

Moreover, the *McEwing* court expressly distinguished *Collela* on the grounds that "the policy in that case contained an expansive lead-in clause to the exclusionary section which stated that State Farm did not insure for such groundwater damage 'regardless of . . . the cause of the excluded event.'" *Id.* at *7 n.7. The *McEwing* court added, "Such an expansive clause does not appear in the policy in this case." *Id.* Because an expansive lead-in clause like the one in *Collela* does appear in the present case, *McEwing* is, again, inapplicable.

7

that policy bars coverage for damage caused by "water . . . below the surface of the ground, including water which exerts pressure on . . . a . . . swimming pool," regardless of the cause of the water damage (Insurance Agreement at 13-14.) This means that questions of where the pipe burst originally occurred; whether it happened suddenly or through gradual wear and tear; or whether the source of the burst was itself above the surface of the ground are all irrelevant. The water damage exclusion, buttressed by its expansive lead-in clause, is sufficient by itself to bar coverage under the facts alleged in Plaintiffs' Complaint. Accordingly, Judgment on the Pleadings is appropriate.

Moreover, Plaintiffs' Objections to the R&R do not provide plausible grounds for rejecting such an interpretation of their policy. Rather, Plaintiffs appear to base their Objections on two rather strained arguments. First, they argue that the definition of "building" in Section I.12 is ambiguous and that a swimming pool could qualify as a "building" under the "tear out and replace" clause. This would mean that Defendant's obligation to repair the burst pipe would obligate it to tear out and replace the damage that pipe caused to their "building:" the swimming pool. (Pls.' Objections, Doc. 17, at 2-4.) Second, they argue that the definition of "subsurface water" in the water damage exclusion is ambiguous, such that there is an issue of fact as to whether it applies to the water in this case. (*Id.* at 5.)

Neither of these arguments is convincing. First, the Court agrees with the Defendant that the term "building" is not ambiguous. The Oxford English Dictionary defines a building as "that which is built; a structure, edifice: now a structure of the nature of a house built where it is to stand."[3] Merriam-Webster Dictionary describes it as "a structure (such as a house, hospital, school, etc.) with a roof and walls that is used as a place for people to live, work, do activities, store things, etc."[4] Finally, Dictionary.com defines a building as "a relatively permanent enclosed construction over a plot of land, having a roof and usually windows and often more than one level, used for any of a wide variety of activities, as living, entertaining, or manufacturing."[5] These definitions reflect near unanimity among the leading dictionaries that a "building" refers to a house-like structure, and not to an in-ground fixture like a swimming pool. This distinction is even more apparent given that, as Defendant notes, the water damage exclusion to the insurance policy itself distinguishes between a "building" and a "swimming pool." (*See* Insurance Agreement at 14 (excluding "water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure" from coverage).) In light of the various dictionary definitions and the clear language of the policy, the Court finds that the two terms cannot be reasonably

---

[3] *See* http://www.oed.com/view/Entry/24409?rskey=bpJtGL&result=1#eid.
[4] *See* http://www.merriam-webster.com/dictionary/building?show=0&t=1379447032.
[5] *See* http://dictionary.reference.com/browse/building?s=t.

considered interchangeable. Accordingly, the Court finds that Judge Blewitt was correct to conclude that the tear out and replacement clause does not apply.

The same flaws apply to Plaintiffs' arguments regarding "subsurface water." To begin with, the water damage exclusion does not refer to "subsurface water" but rather to "water . . . below the surface of the ground." (Insurance Agreement at 14.) Even if it is arguable that the phrase "subsurface water" is ambiguous, the phrase "water below the surface of the ground" is not. Indeed, it could hardly be clearer. And while Plaintiffs argue that "Pennsylvania case law has long recognized subsurface water as rain or snow," (Objections at 5; Pls.' Brief in Opp. to Def.'s Mot. for J. on the Pleadings at 6-7), such is simply an incorrect reading of the law. The case law that Plaintiff cites actually states "that *surface* waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow." *Richman v. Home Ins. Co. of N.Y.*, 94 A.2d 164, 166 (Pa. Super. Ct. 1953) (emphasis added). Plaintiffs have not provided any evidence, besides bare assertions, that the phrase "water below the surface of the ground" is at all ambiguous or that it is reasonably susceptible to a meaning other than what it appears on its face to mean.

Moreover, even though Plaintiffs allege that their loss "was due to a break or rupture in the plumbing system above the surface of the ground," (Compl. at ¶ 17), such facts, even if true, are irrelevant. The "lead-in" clause of the insurance policy bars

coverage for excluded events regardless of their cause. Accordingly, the question of where the rupture occurred is irrelevant as long as the water that caused damage to Plaintiffs' pool was itself below the surface of the ground when it caused the damage.

It is clear from the rest of the pleadings that the water at issue was indeed below the surface of the ground. Plaintiffs allege that their "in-ground concrete swimming pool lifted and/or heaved up at least one (1) foot from the ground due to [a] plumbing system break and/or burst." (*Id.* at ¶ 6.) The only way for an in-ground pool to "lift" or "heave" up is for it to be pushed up by something from underneath the surface of the ground. Plaintiffs essentially admit this point later when they argue that "Defendant's obligation to repair the ruptured plumbing line requires the removal of the concrete in-ground pool." (Pls.' Brief in Opp. to Def.'s Mot. for J. on the Pleadings at 4.) Plainly, if Defendant would need to remove an in-ground pool to access a plumbing line, this implies that the plumbing line, and the water that came out of it, is below the surface of the ground.

### V. Conclusion

Based on the foregoing arguments, the Report and Recommendation (Doc. 16) is **ADOPTED**, Plaintiffs' Objections (Doc. 17) are **OVERRULED**, and Defendant's Motion for Judgment on the Pleadings (Doc. 8) is **GRANTED**. A separate Order follows.

Robert D. Mariani
United States District Judge